IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Viking Arm AS, <br><br> Plaintiff, <br><br> v. <br><br> The Partnerships and Unincorporated Associations Identified on Schedule A, <br><br> Defendants. | Case No. 24 C 1566 <br><br> Hon. LaShonda A. Hunt |

**ORDER**

Plaintiff Viking Arm AS filed this lawsuit for trademark counterfeiting and infringement, and copyright infringement [1][2] against 181 defendants who are identified by a store name and merchant ID on a sealed document titled Schedule A [2-3]. Plaintiff is the inventor, manufacturer, and distributor of the "Viking Arm," a hand-jack and multi-tool product it sells throughout the world. (Compl. ¶ 9). Plaintiff owns the federally registered trademark and copyright for the name and mark, VIKING ARM, and alleges the Schedule A defendants are illegally using it on internet stores to sell counterfeit versions of Plaintiff's products. (Compl. ¶¶ 2-4, 9-14, 21).

Plaintiff filed under seal nearly nine-hundred pages of screenshot evidence culled from the webstores of these Schedule A defendants [11] to support a motion for an *ex parte* temporary restraining order [10]. But the complaint itself alleges only that "[u]pon information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell" these counterfeit goods. (Compl. ¶ 4). Plaintiff does not attempt to plausibly tie these seemingly distinct defendants and the claims against them to each other. After the Court questioned whether the complaint adequately states grounds for joinder of each Schedule A defendant in a single lawsuit [16], Plaintiff filed a sealed

1

memorandum and additional declaration [17] in response. Upon review, the Court concludes that Plaintiff has not met its burden of demonstrating that joinder of all 181 defendants is proper.

### STATEMENT

Federal Rule of Civil Procedure 21 provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. *Sua sponte* review of the propriety of joinder in Schedule A cases is a regular practice in this district. *See Estee Lauder Cosmetics, Ltd. v. P'ships and Unincorporated Ass'ns Identified on Schedule A,* 334 F.R.D. 182, 186 (N.D. Ill. 2020) (noting that "it is appropriate for federal courts to raise improper joinder on their own, especially when the sheer number of defendants waves a joinder red flag"); *accord Bailie v. The P'ships and Unincorporated Ass'ns Identified on Schedule A*, No. 24 C 2150, 2024 WL 2209698, at *4 n.5 (N.D. Ill. May 15, 2024) (collecting cases). And yet, plaintiffs continue to routinely file these multi-defendant cases here using cookie-cutter complaints that allege in a conclusory manner that "on information and belief" each infringing defendant is inter-connected with the others. Whether the case involves 5 defendants or 500 defendants, the basic allegations remain the same.

Plaintiffs discover after conducting an internet search on their trademark, copyright, and/or design patent, that webstores hosted on popular third-party e-commerce sites like Amazon, eBay, Wish, Alibaba/Aliexpress, Shopify, Walmart, Wish, Temu, etc. are brazenly selling inferior knock-off products using plaintiffs' intellectual property. Plaintiffs insist that even if they report the illegal activity and the platforms shut down the offending Internet stores, the infringers, who are mostly located in China and other foreign jurisdictions and actively concealing their identities, simply set up another store under a different name and resume business as usual. And so, the federal courts are the last resort for plaintiffs seeking to immediately enjoin these sellers from continuing their

counterfeiting operations. *See, e.g., Brabus GMBH v. Individuals, Corps., LLCs, P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 20 C 3720, 2022 WL 7501046, at *1 (N.D. Ill. Oct. 13, 2022) (aptly describing this as "the Northern District of Illinois vs. The Internet").

Federal Rule of Civil Procedure 20(a)(2) allows these plaintiffs to join all defendant sellers in one action if the claims arise out of the same transaction, occurrence, or series of transactions or occurrences. It is well established, however, that "simply committing the same type of violation in the same way does not link defendants together for the purposes of joinder." *Bose Corp. v. P'Ships & Unincorporated Ass'ns Identified on Schedule A*, 334 F.R.D. 511, 514 (N.D. Ill. 2020) (citing *AF Holdings, LLC v. Does 1-1058*, 752 F.3d 990, 998 (D.C. Cir. 2014)); *cf. Tang v. P'Ships & Unincorporated Ass'ns Identified on Schedule A*, No. 23 C 4587, 2024 WL 68332, at *2 (N.D. Ill. Jan. 4, 2024) (finding joinder improper under 35 U.S.C. § 299 where the complaint "boils down to a claim that the defendants infringed on [plaintiff's] design patent in the same way"). Rather, the focus is on "whether there is a 'logical relationship' among the claims and parties in a case." *Bose*, 334 F.R.D. at 513. In the simplest terms, "courts are tasked with determining whether it makes sense for the parties and claims to be litigated in the same case." *Id.*

The initial problem with Schedule A cases, of course, is that plaintiffs say they don't know exactly who the defendants are in order to properly name them as parties as Rule 10(a) requires, let alone how these defendants are operating their illegal businesses in order to include specific allegations to establish grounds for joinder, as Rule 20(a)(2) requires. Plaintiffs routinely attach to their filings the same lengthy articles detailing the various challenges with combatting foreign counterfeiting. In many ways, these plaintiffs are not unlike any other litigant trying to demonstrate a plausible right to relief and get through the door into discovery to investigate further. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("[W]e do not require heightened fact pleading

3

of specifics, but only enough facts to state a claim to relief that is plausible on its face."). Still, "[t]hreadbare recitations of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As applied to the instant case, "[i]n assessing whether the requirements of Rule 20(a)(2) are met, courts must accept the factual allegations in a plaintiff's complaint as true." *Estee Lauder I*, 334 F.R.D. at 185 (citations omitted). But "courts are not required to accept conclusory or speculative statements that do not qualify as assertions of fact." *Id.*

Determining if permissive joinder is proper, especially in Schedule A cases with scores of defendants, requires courts "to manage the structure of lawsuits in a manner that encourages the lawful resolution of disputes" while also recognizing that plaintiffs "cannot be lawless and must abide by Rule 20's terms." *Bose*, 334 F.R.D. at 513. This inquiry involves a case-by-case assessment of the facts and circumstances and balancing of the key factors underlying the joinder analysis—fundamental fairness to plaintiffs, judicial economy, and avoiding prejudice to defendants. *See Id.* at 516-517; *Estee Lauder I*, 334 F.R.D. at 187-190; *Bailie*, 2024 WL 2209698, at *5.

In other words, the continuing harm to plaintiffs who seek immediate relief from courts to protect their intellectual property rights and prevent further economic loss is a strong consideration. *See, e.g., Bose*, 334 F.R.D. at 517 (finding permissive joinder "of all [17] defendants who are part of the swarm attacking [plaintiff's] trademarks flows easily from conceptualizing the swarm as the relevant Rule 20 'occurrence'"). But equally important are the due process rights of each defendant against whom *ex parte* relief, including the extraordinary remedy of an asset freeze without notice, is sought. *See, e.g., Bailie*, 2024 WL 2209698, at *5 (pointing out the one-sided nature of the affidavits and evidence presented and the need for close scrutiny, "particularly in

4

those instances wherein the affiant is not a disinterested party") (citations omitted). And finally, the burden on busy courts asked to manage dozens if not hundreds of defendants in one case and thoroughly review "enormous evidentiary submissions" initially and at the "liability stage of the case . . . to make a rational assessment of statutory damages" cannot be ignored. *See Estee Lauder I*, 334 F.R.D. at 186.

With those principles in mind, the Court turns to Plaintiff's arguments in the instant case, most of which have been rejected by other courts in this district. First, Plaintiff asserts that the "evidence available . . . at this juncture" suggests many of the online sellers share similarities such as common ownership, geographic operations, and channels of securing counterfeit goods. (Joinder Mem. at 7, Dkt. 17). But such conclusory statements that are not accompanied by "specific facts, or other well-pleaded allegations" to support them cannot satisfy Rule 20(a)(2). *Bailie*, 2024 WL 2209698, at *3 (collecting cases). Next, Plaintiff includes a declaration from its CEO discussing how Chinese manufacturing and counterfeit sellers operate, but those are the type of "highly generic" allegations that "apply equally to individuals and entities engaging in activities that are not the subject of this suit." *Illustrata Servicos Design, Ltd. v. P'Ships and Unincorporated Ass'ns on Schedule A*, No. 21 C 5993, 2021 WL 5396690, at *2 (N.D. Ill. Nov. 18, 2021).

Plaintiff also attaches a chart which purports to show the webpages of about 35 defendants and pictures of products with similar design characteristics, but counterfeiters copying the marketing and advertising on similar websites simply "does not establish a logical relationship between every Defendant." *Id.* At most, Plaintiff has identified a small subset of the 181 defendants who are copycats of Plaintiff's style and each other, but that does not make them *all* partners in collusion. *See Bose*, 334 F.R.D. at 514. Plaintiff further points out that defendants likely use the same manufacturer to procure certain parts or the same platforms to sell counterfeit products that

5

are distributed through common shipping facilities, but those are all "coincidentally identical facts" that reflect the way these internet webstores tend to operate, not that all defendants are "part of a network of infringers." *Tang*, 2024 WL 68332, at * 2 (citing *In re EMC Corp.*, 677 F.3d 1351, 1359 (Fed. Cir. 2012)). Finally, Plaintiff claims the defendant sellers are coordinating activity on a website, but the referenced post is from 2021 and involves an entirely unrelated product. Simply put, there is no evidence that *these* Schedule A defendants are discussing *this* Plaintiff's products. *See Bose*, 334 F.R.D. at 514 (stating "the problem is that [plaintiff] has not connected any of the Defendants to the chat-rooms and websites it identifies").

Moreover, the interests of judicial economy are not served by allowing plaintiffs to wholly disregard the principles of Rule 20(a)(2) to the detriment of all other stakeholders. "[T]he assertion 'this is how things have been done' is not a justification for doing them that way." *Doe v. Trustees of Indiana Univ.*, No. 22-1576, 2024 WL 1824967, at *4 (7th Cir. Apr. 26, 2024). This Court is persuaded that "[i]n view of the reality that Schedule A plaintiffs typically request thousands of dollars in statutory damages, the increased costs to plaintiffs do not, on this record, justify the serious prejudice to defendants that occurs when a meaningful *ex parte* review of hundreds of thousands of pages of screenshots and intellectual property specimens becomes effectively impossible." *Bailie*, 2024 WL 2209698, at *5.

Because most Schedule A defendants never appear in these cases to defend themselves, plaintiffs eventually obtain default judgments against an overwhelming majority of them. But that fact does not negate the Court's obligation to fully and fairly consider the claims raised by plaintiffs *and* ensure that the relief sought against *each* defendant is warranted in accordance with the rule of law.

**CONCLUSION**

For the reasons discussed above, joinder of these defendants in this case is improper under Fed. R. Civ. P. 20(a)(2). Plaintiff is granted leave to file an amended complaint consistent with this order along with an amended Schedule A (that may be filed under seal) by June 20, 2024. Plaintiff's Motion for Temporary Restraining Order [10] remains under advisement. However, Plaintiff must file a supplement to the TRO that specifically identifies the relevant pages where evidence pertaining to each amended Schedule A defendant can be found in the prior voluminous submissions or simply reattach the relevant pages for ease of court review. Otherwise, this Court will exercise its discretion to sever and/or dismiss parties without prejudice to cure the misjoinder. *See UWM Student Ass'n v. Lovell*, 888 F.3d 854, 864 (7th Cir. 2018).

**Dated: June 6, 2024**  ENTERED:

_LaShonda A. Hunt_____
**LASHONDA A. HUNT**
**United States District Judge**